The group may please the Court. I'm Dr. Gordon Finnegan on behalf of the San Francisco Geographic Association. This case will decide whether one of the oldest fisheries in California will continue to operate in the same sustainable manner it has for more than 40 years, or whether, instead, it will be regulated in a way Congress did not intend. California regulates that fishery in San Francisco Bay under annual plans that are subject to strict environmental review. Fishing takes place only a few days each year when and where the Herring Inn in the Bay is loaded. In 2011, a Park Service prevented boats from entering a key swampy ground next to the Olympia National Recreation Area. They were purporting to enforce Regulation Prohibiting Tourist Fishing in National Parks Act of 1983, and for 17 years they had not sought to enforce it in those waters. There's two issues related to this enforcement for the Court to decide today. The first is under the Act they created in the Park. Does the limitation that requires the Department to acquire property interests in the lands and waters within its boundaries, but where it has jurisdiction there, apply to waters? Second, does the MPS Organic Act allow the Park Service to regulate waters in the National Parks? And repeal their requirement? On the first question, the statute is clear that the Park Service jurisdiction is limited to lands and waters that the Department has acquired to become part of the Park. It's clear in Section 4 that the administrative jurisdiction of the Park is limited to its lands and waters required, and the Department does not contest that it's the way the statute works, that it's the lands. This framework was a deliberate choice by Congress. Congress at the time, in 1972, had already created National Parks a number of different ways. One was to draw the boundaries of the Park and confer title to all the property therein to the Department. Another was to draw the boundaries and give administrative jurisdiction within those boundaries to the Department. A third was to say to the Department to go off and acquire property in a general area under discretion. And fourth is the way they did here, which was to draw outer boundaries and give to the Department's discretion to acquire property within them. Not only that, Congress specifically considered some of these other means in enacting the Act here. They considered allowing the Park Service to regulate within the borders of the recreation area without qualification. And they considered using eminent domain to convey the property to the Department, and they chose not to take those routes. So under the Act, until the Department acquires some interest in the waters and issues, they remain in California's state waters and outside the jurisdiction of the Park Service. The problem here is that the district court is wrong. In this case, it doesn't attribute any meaning at all to the term waters in the statute. We believe that as long as waters is capable of a reasonable construction, it cannot be read out of the statute. The court needs to apply it. And here, the court can give a name to that language. As one example, the state could give any easement for conservation purposes to the Department, and that would be consistent with the public trust. California is free to choose how it serves and look for excuses. And the statute already shows that an easement is sufficient to confer a permissive administrative jurisdiction to the Park. In section 416, AB2-P, an easement is provided over a safe and secure water department with lands. Thank you. I'd like to ask this one. What is the final agency action that your client is challenging? Certainly, the final agency action that the client is challenging is the actual exclusion from the waters at issue during the fishing season in 2011. Up to that point. Well, so that is the conduct that caused the actual intrusion. Up to that point, at least as to members of the association, they were free to fish in the waters at issue. For those who may not know, there was a 1983 regulation that said they could not use. So the 1983 regulation just applies to the National Parks generally. There was never any indication that the Park Service thought it applied in these waters from 1983 until 2000 when they answered a survey question in response to the Department of Fish and Wildlife. From then on, there was a dispute as to jurisdiction between the Department of Fish and Wildlife and the Park Service that resulted only in enforcement starting in 2011. So their association is not bringing a fishing challenge to the regulation. The regulation is valid within park lands throughout the system. It's only the application of that regulation to them that occurred in 2011 when they were permitted by their own waters. Yes. To return to the issue of the Park Enablement Extension, the district court read what? Did they take any action against your clients, or did they actually say they were violating? What did they actually do, other than just cite enforcement? Right. So there was a physical restriction that prevented them from entering the waters, and they were told they could not enter the waters to fish there. And how is that violating agency action? So, Your Honor, under the statute, as with any agency action, it includes a sanction. What about a sanction? And the sanction is defined in the statute as the whole or part of an agency prohibition, requirements, limitations, or other condition affecting the freedom of a person or seeing the imposition of the penalty as defined. But the enforcer wasn't the prohibition. The regulation was the prohibition. That was 1983. So there was no understanding on the part of any of these plaintiffs that that regulation would be applied. Why is that relevant to whether or not we have jurisdiction? Because, Your Honor, it's not a facial challenge to the regulation itself. But why is it that they interpret how the statute applies to violating agency action that provides us with jurisdiction under the APA? I'm sorry, I didn't catch that. Well, since you're saying this, they didn't understand that with the regulation that covered the national parks, it does actually apply to this territory. Sure. But it's not like it was newly applied. The sanction can always be applied. And so that was perhaps a more choice question. That was probably distracting. We can get to that now. Just answer. Why don't you answer my question, and then we'll get to that now. Okay? Sure. The regulation did not cause any injury to the plaintiffs. It was not until the regulation was established. But you're not talking about Article III standing, right? We're talking about jurisdiction under the APA review. So I would refer the court to the California State version case that was authored by Judge Gould, which is law enforcement. With this case, it can't be the regulation itself that causes the injury of services and the sanction of rights. But in that California CRC case, did we have an issue of finality of final agency action? Because I don't recall that. I think the problem was, so the military behavior was not conceded. It was not intended that the terminations, the honor program in that case, was not a final agency action. It was intended that the statute of limitations began funding. So that issue wasn't really presented in that case. Well, I appreciate your signing an opinion that I authored favorably. I don't quite understand how it answers the question here. So I think the problem is, it's strange that the statute of limitations issue and the need to squarely address final agency action here is that the plaintiffs are challenging the state enforcement and Wed River and her first course service in the Sixth Circuit. I am clear that that is a challenge to be had there. You can challenge the application of a regulation to yourself. It has the access of agency authority within six years of that application. I think that her first course service case puts it squarely. It's hard to think that employers wouldn't be able to challenge the government authority to put them in jail for violating a regulation because they didn't judge the regulation on the name of the network. To return to the issue of the parks enabling act, the district court determined that the language in the GGRA Act was boilerplate. That determination is not a basis to read out the term of a water supply statute. The phrase lands, waters, and interests therein is commonly used throughout 1054 to mean what it says. Turning to the MPS Organic Act, the department's position here is similar to the position in the Baston Stretcher case before the Supreme Court. It doesn't really matter what the enabling act of the park says because the MPS Organic Act speaks to the boundaries of the park system. The Supreme Court didn't accept that argument and instead demanded a circuit-based determination of whether the waters at issue in that case were under the jurisdiction of the park service under the specific enabling statute in that case. I think that's the right result. The MPS Organic Act itself says it does not apply where it conflicts with a park-specific statute. So the clearest way this court can resolve the conflict between, or the purported conflicts between the MPS Organic Act and the GGNRA Act here is to do so on the basis of the MPS Organic Act. It's a disclaimer of application where there is conflict. I thank you for serving my time. First, the association's lawsuit is non-justiciable because it fails to timely challenge any funding agency action as required by the APA. Second, even if it were justiciable, the district court correctly found, it is without marriage because the association's interpretation of the Golden Gate Act is requiring the Park Service to acquire the Navajo water within the Golden Gate Recreation Area's boundaries. The emerge regulated is untenable. First, will Santa Barbara not raise the final agency action rule? It really is interrelated with the statute of limitations argument, Your Honor, and we did raise that. We made the argument that they were, in fact, challenging the 1983 regulation and they were out of time. So we've raised it more in terms of statute of limitations below. They are interrelated. However, it is a jurisdictional requirement, so this court does have an obligation to reach the final agency action issue. But the court should not reach the merits here because the Park Service prohibited commercial fishing. The district court law, you referenced, in all national parks by regulation in 1983, 30 years before the association filed this lawsuit, and no separate and subsequent final agency action rendered that prohibition applicable to the Golden Gate National Recreation Area or to the association's members. Accordingly, the association has failed to challenge a final agency action as required by the EPA. With respect to what they are, in fact, challenging, the association has disavowed any challenge to the Park Service's 2011 informational notice to its libraries. And they assert that they challenge only the service's so-called enforcement of the prohibition that began later that season. Your Honors, we've looked very closely at all of the sites that they have given for what they mean by that enforcement. And, you know, so they've taken the notice off the table and they say that what this of the regulation in response to an association member's request and Park Service's presence in the navigable waters issue during the fishing seasons. Whether you consider these things separately or combined, they do not meet the EPA's definition of an agency action, let alone a final agency action. They do not comprise a whole or part of any rule, order, sanction, or relief, and they do not meet neither of the two requirements for final agency action. And what would be the requirement of agency action, or final agency action, in this case? Well, they should have, Your Honor, we submit that they should have a general rule. AESA parties should challenge the regulation when it is promulgating, and the plaintiffs allege that their members have been fishing in this area for 30 years. So that is one opportunity. Another opportunity, they could petition the agency to amend or rescind its rulemaking and then challenge a decision in court. They would also have the opportunity to raise the issue if a citation were issued. We recognize that they may not want to do that, but that's a third opportunity for them to challenge this rule. How do you distinguish wind river mining? Well, wind river mining, Your Honor, is a very unique requirement. We submit it's limited. It establishes a limited exception to the general rule, permitting, as applied, ultra-virus challenges, but the case is applying in one. Wind river doesn't address the final agency action requirement. It is pure statute of limitations case. It doesn't appear that final agency action was raised. And on the facts of that case, that makes sense, because wind river did go to the agency. It went to the, it saw relief from interior, obtained an interior board plan appeals decision, and then challenged that decision in court. You don't have that here. They didn't petition the agency or obtain any kind of final agency decision like that. But also, Your Honor, the cases applying wind river do make clear that the final agency action still stands. So before that, before that exception to apply, there has to be a subsequent final agency action applying the first stage of the final agency action to the plaintiffs. So in wind river, the court was grappling with a choice between two final agency actions. There's only one in this case. It's the 1983 promulgation of the regulation. There is no second final agency action for the court to consider. It is a choice between the two. And the plaintiffs, you know, on appeal, they are making, they say that, they talk about that they were, there are allegations that they were prohibited from fishing. It is not clear what they mean by that. It appears that they mean that the curbsurface was present in the waters. There's not even a physical closure here, which in wild fish conservancy, this court found was not a final agency action. And sort of the significant point there is practical consequences are not enough. It's legal consequences. You need two things, consummation of the agency's decision-making process and legal consequences. Now you have neither of these things here. So they have a definite final agency action problem. The only, and related to it, the arguments go together, they also have a statute of limitations problem. Because the only final agency action from which the six-year statute of limitations could run is the 1983 regulation. So they've both failed to meet the final agency action requirement, and they've come to court too late. So we submit, because of the jurisdictional defect, the court should re-enact the district court and disqualify the subject matter jurisdiction. If there are no further questions on that, I'll turn to the statutory interpretation. All right. Please tell me how you distinguish a judge called a defendant in C.A. or J.S. California C.A. or J.S. It's very different. In that case, you had, one, there was a rule that was the termination of a California southern sea auto translocation program. And in the first final agency action, the agency had announced, you know, it had established the program, and it announced the criteria by which it would decide, it would apply to terminate the program later. But then the plaintiffs actually challenged the termination in which the criteria were applied. That was the operative final agency action, as Judge Gold's opinion makes very clear. And so there was, so the first thing that they, the first final agency action in that case simply established the program and announced the criteria that the agency would use to consider its termination. The agency didn't actually apply those criteria until the subsequent later final agency action. And as operative, that was the consummation of the decision-making process and also had legal consequences of terminating the program. Judge Gold is correct that it was also, it was a similar argument about statute of limitations. The agency made the argument that they should have challenged the first agency action where the criteria were announced. And this court said no, because the operative final agency action didn't happen until later. This case is completely distinguishable. The operative final agency action is a 1983 regulation. Under that regulation, commercial fishing is prohibited in all national parks, absent a statutory exception. There's no statutory exception. That is the regulation that prohibits commercial fishing. There is no subsequent, nothing needed to happen in order to render that applicable to the Golden Gate National Recreation Area, nothing needed to happen to render that applicable to the association's members. So in this instance, there's only the one, the only final agency action that has been identified is the promulgation of the 1983 regulation. On the statutory interpretation point, their interpretation of Section 4 of the Golden Gate Act is simply untenable. It reads into that statute a significant, sui generis limitation on the Park Services Authority that simply is not fair. That section is a nuts and bolts administration provision. It directs the Secretary to manage this area as a national park, and it further authorizes the Secretary to utilize such statutory authority available to him for the conservation and management of wildlife and natural resources as he deems appropriate to carry out the purposes of this chapter. And that authority, of course, includes the General Authorities Act and the 1976 amendment thereto, which expressly grants the Park Service the power to prescribe regulations concerning golden gate and other activities on or relating to water located within areas of the national park system, including water subject to the jurisdiction of the United States. The absence of an acquisition prerequisite applicable to navigable waters provides further support and language for the Act as a whole. Congress prescribed a detailed acquisition policy in Section 3 of the Act, and if it intended to require the Park Service to acquire navigable waters, it has conditioned precedent to regulating them. It can be expected to have done so in this section and to have made its intention clear. You know, the Supreme Court has stated it well that Congress does not hide elephants and mouse holes, but Congress didn't do that and instead drew the boundaries to include these and did draw the boundaries to include navigable waters, and this makes eminent sense because navigable waters are simply not owned, in the sense that land is owned, and the federal government's authority over navigable waters is not based on ownership. The Association has identified no statute requiring the United States to require navigable water as a condition of regulation, nor any case finding such a requirement. And moreover, it takes the position that the United States cannot acquire title because California's Constitution prohibits it. They've come up with this idea that California could grant an easement, but we're not aware of that being done, and it's also significant here that California is another position. California doesn't dispute the United States' authority over these waters, and the two parties, California and the United States, are in fact regulating them cooperatively together, so there's no dispute among the sovereign here. California has the real interest under the Association's argument, but California has not taken this position. And you know that Congress drew the statute in this way, and so their argument really is that Congress drew the boundaries to include these navigable waters, and at the same time made it impossible to the United States to acquire the requisite interest, which would logically impugn Congress's intent to paralyze, with one hand, what it's ought to promote with the other. The act would need not and should not be read that way, and sort of the summary on the statutory interpretation point is that it can and should be interpreted to implement the Park Service to exercise both its ownership-based authority over lands it acquires, as well as its statutory-based authority. And the reason we submitted a high point to this court is just to illustrate the point that this statute, the Golden Gate Act, is not the exclusive source of the Park Service's authority over national parks, including this one, and there simply is no inconsistency in reading the statutes to permit the exercise of both sources' authority. That interpretation gives effect to all of the statute's provisions, it harmonizes the statute with other applicable statutes, and it's also entitled to deference. If there are no further questions, Your Honors, we request that the Court remand the case with instructions that it be dismissed for lack of subject matter jurisdiction or the alternative affirmed in this report's judgment. All right, thank you, Kansal. Thank you, Your Honors. Just a couple of comments. First, as regards to the interpretation of the enabling statute, the legislative jurisdiction of the United States over navigable waters is not an issue here. We concede that the legislative jurisdiction does not depend on title. It's a question of what covers stand in the actual statute. The Park Service's retro statute, it does not have authority to the full balance of the legislative jurisdiction of the United States unless Congress has some. Second, the fact that the California public trust rate prevents total alienation of title in the water doesn't render the statute meaningless in this case, and that's because there are other means by which California can grant to the Department a property interest sufficient to give it administrative jurisdiction over the waters while not impeding the public trust rate. Third, with respect to the High Point case, I think that actually supports our position because there, the parking motion was designated under the Wilson Act. It was a separate statutory authorization. The Park Service was in it during the 100th cycle. The enabling statute in that park gives administrative jurisdiction over the seashore and not merely the lands, waters, and rivers. They're favored by the Department for the seashore, which would have been more like our statute. I'm sort of trying to make issue of final agency in action. I think it's important to step back and ask what appreciate what the government's asking us for to adopt, which is a rule that a statute brought us from when a plant has constructive knowledge that a regulation might be applied to a consumer in the future. The hypothetical I present to you is, what if the Park Service tomorrow were to enforce its commercial fishing prohibition on Alpine Lake in the middle of Moran, a property that no one has ever considered to be within the jurisdiction of the Park Service? Does that mean that the residents of Moran who want to challenge that assertion of authority are out of luck because they did not do so in the 16th and 1983 statute? I think it would be wrong to adopt a rule here where our members would have to go into the waters and they would only get arrested and risk fines before they could challenge the statute. They've been successful. What about filing a petition? That's what the government said that you could file a petition and did a ruling from the agency for defining your request to clarify the favorable things of the association. Sure, and I don't think we're foreclosed to that, Your Honor, but I don't think we need to because there has to be a physical closure and a physical restriction from our members entering the waters, and that is a restriction on the control and on the movement of an individual that meets the terms of the final agency action under the statute. Your Honor, if there are no further questions, we'll submit that decision today for recursion. All right. Thank you, counsel. Ms. Anderson, Stowe Area Association v. DOI is submitted, and the decision of the court is adjourned for today. Thank you.
judges: Wardlaw, Gould, Huff